**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
BANKRUPTCY DIVISION
DIVISION OF ST. THOMAS AND ST. JOHN**

IN RE

| | |
|---|---|
| Jeffrey J. Prosser | Bankruptcy No. 06-30009-JKF |
|     Debtor | Chapter 7 |
| | **Related to Doc. No. 2370, Motion to Recuse** |
| | **Judge filed by Debtor Jeffrey J. Prosser** |
| | |
| Innovative Communication Company | Bankruptcy No. 06-30008-JKF |
|     Debtor | Chapter 11 |
| | **Related to Doc. No. 1445, Motion to Recuse** |
| | **Judge filed by Debtor Jeffrey J. Prosser** |
| | |
| Innovative Communication Corporation | Bankruptcy No. 07-30012-JKF |
|     Debtor | Chapter 11 |
| | **Related to Doc. No. 1115, Motion to Recuse** |
| | **Judge filed by Debtor Jeffrey J. Prosser** |

**MEMORANDUM OPINION**[1]

The matter before me is Debtor Jeffrey J. Prosser's motion seeking my recusal. Doc. No.

2370.[2] Mr. Prosser filed this motion on February 6, 2009. Responses were filed on March 6,

2009, by the Rural Telephone Finance Cooperative ("RTFC"), Doc. No. 2410, and the Chapter 7

---

[1]This Memorandum Opinion constitutes the court's findings of fact and conclusions of law. The court's jurisdiction is not at issue. References herein to document numbers refer to the documents as filed in Mr. Prosser's Chapter 7 case, Case No. 06-30009, unless otherwise noted.

[2] Mr. Prosser filed this motion in his own bankruptcy case as well as in the bankruptcy cases of his former companies. There are four related bankruptcy cases: Emerging Communications, Inc. ("ECI"), Case No. 06-30007; Innovative Communication Company, LLC ("ICC"), Case No. 06-30008; Jeffrey J. Prosser, Case No. 06-30009; and Innovative Communication Corporation ("New ICC"), Case No. 07-30012. ECI and ICC were administratively consolidated and all pleadings with respect to them are filed at the ICC case number and its related adversaries. Mr. Prosser fails to provide how the alleged bias against him requires recusal in the corporate cases.

Trustee, Doc. No. 2412.  The Chapter 11 Trustee joined the RTFC's and the Chapter 7 Trustee's

objections on March 9, 2009, Doc. No. 2415. Argument was heard on April 21, 2009.  Transcript

of 4/21/2009 Hearing,  Doc. No. 2459, at 7-24.

      Mr. Prosser asserts that recusal is appropriate pursuant to 28 U.S.C. §455(a), which

provides "Any justice, judge, or magistrate judge of the United States shall disqualify himself in

any proceeding in which his impartiality might reasonably be questioned."  The standard for

recusal in this Circuit is "whether a reasonable person, with knowledge of all the facts, would

conclude that the judge's impartiality might reasonably be questioned."  *In re Kensington Intern.*

*Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003).  *Accord U.S. v. Wecht*, 484 F.3d 194, 213 (3d Cir. 2007).

Ultimately, whether recusal is appropriate is dependent upon whether the judge harbors "a deep-

seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United*

*States*, 510 U.S. 540, 555 (1994).  A party seeking recusal of a judge bears a substantial burden

as a judge is presumed to be impartial.  *McCann v. Communications Design Corp.*, 775 F. Supp.

1506, 1522 (D. Conn. 1991), *reconsideration denied* 1992 WL 336760 (No. Civ. 2:92-34 (JAC))

(Oct. 1, 1992, D.Conn.).

      In applying §455, the court must examine the entire course of events.  *See, e.g., Miller v.*

*Hendricks*, 282 Fed. Appx. 102, 104 (3d Cir. 2008), *cert. denied sub nom. Miller v. Ricci*,

___U.S.___, 129 S.Ct. 591 (2008)(recusal is in order if a "reasonable observer aware of all the

circumstances 'would harbor doubts about the judge's impartiality'").  For purposes of this

motion, the "reasonable observer" from whose perspective this court must examine the record

would have observed numerous hearings occurring over the three year period these bankruptcy

cases have been pending.  Omnibus hearings that have often involved more than six hours of in-

2

court time generally have taken place on a monthly basis.  Weeks of trial and various other hearings have been scheduled in addition to the omnibus hearings.  Mr. Prosser has cherry-picked rulings from an extensive record in an attempt to raise a specter of bias even though the appropriate method to address alleged errors in a court's ruling is by appeal or motion for reconsideration which Mr. Prosser has utilized regularly.  It is impossible for this court to capture in a single opinion the nature and stream of events which have transpired in these complex bankruptcy cases and related adversary proceedings. This is especially true in analyzing this motion, in those portions where Mr. Prosser has taken this court's rulings and comments out of context.  The fact that Mr. Prosser is unhappy with certain rulings by this court neither justifies a motion for recusal nor supports a claim of bias.  To the extent that Mr. Prosser is using this vehicle in an effort to re-litigate issues, this court's rulings have already been made and subject to the opportunity to appeal.  The rulings stand for themselves, and this is not a place where the court can re-address them.  Given fact that Mr. Prosser has selectively chosen isolated incidents, I will do my best to address Mr. Prosser's allegations without reconstructing the entire record.

The allegations are that I have a bias against Mr. Prosser and that my impartiality might reasonably be questioned based on rulings I have made during the three year tenure of these related and highly contentious bankruptcy cases, a comment made in support of a ruling in Mr. Prosser's favor, and the conduct and participation of counsel.  For the reasons which follow, the motion to recuse is denied.  The bases asserted in support of the request are without merit.  All the rulings made were based upon the evidence presented, the arguments on the record, and the law as I understand it applies.  That is not bias, and a motion for recusal is not a mechanism to

avoid the appeals process.[3]  Further, some of the events complained about were appealed and

decided. Other appeals are still pending.

It is significant that there is no extrajudicial source at issue in determining whether

recusal is appropriate in this case.[4]  Despite Mr. Prosser's argument that an extrajudicial source

is "merely a 'factor' to be considered," such a characterization is misleading.  Jeffrey Prosser's

Memorandum of Law and Argument, Doc. No. 2370, at ¶5.  It is true that "[t]he most critical

factor is not the source of the judge's prejudicial knowledge or bias, but rather the judge's

'inability to render fair judgment.'"  *In re Antar*, 71 F.3d 97, 101-02 (3d Cir. 1995).  "Under the

extra-judicial source doctrine, however, alleged bias stemming from facts gleaned from the

---

[3] "First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion....In and of themselves, (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required...when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible....*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune."  *Liteky,* 510 U.S. at 555-56.

[4] Regardless of this fact, Mr. Prosser asserts that "to the extent that this Court examines the extra-judicial source as a factor here, that factor clearly weighs in favor of recusal.  For instance, the Court's excessive hostility toward Movant's counsel is *extra-judicial in nature*."  Jeffrey Prosser's Memorandum of Law and Argument, Doc. No. 2370, at ¶5.  Despite this imaginative characterization, the extrajudicial factor is not present in this case.

4

judicial proceeding will rarely be grounds for recusal." *Securacomm Consulting, Inc. v.*

*Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000).  In this case, there is no source but the record.

For purposes of simplicity, unless specifically noted otherwise, we will cite only to

docket entries in Mr. Prosser's individual case, Case No. 06-30009, although the motion to

recuse was also filed in the corporate bankruptcy cases.  The ruling applies in all the cases.

<u>Court's Statement Regarding Mr. Prosser's Right to Assert the Fifth Amendment</u>

Mr. Prosser alleges that a comment I made during what the parties refer to as the

"Exemptions Trial" is evidence of prejudice.  At the Exemptions Trial, counsel for Mr. Prosser

voiced concern regarding questions that would be posed to Mr. Prosser, who sought to assert the

Fifth Amendment despite having testified on the same or similar subjects in other proceedings,

as he was to be called as a witness the following day.  The following is the statement at issue:

> THE COURT:  Folks, that is not an issue I can address.  If they
> think that they are criminally culpable for something, they should
> take the Fifth.  And frankly, *based on some of the evidence that
> I've heard today*, if the United States [A]ttorney doesn't think that
> they're criminally involved in something, there's probably
> something wrong with the United States Attorney.  So if, *from
> what  I'm hearing today*, Mr. Schoenbach probably isn't going to
> be doing his duty if he doesn't advise his client to take the Fifth.
> So I'm pretty hard-pressed to see how Mr. Prosser is going to be
> answering much of anything.  But nonetheless, I will take a look at
> these cases.  If you want to call him as an adverse witness, you're
> certainly entitled to.  You may ask him questions, to a  certain
> extent. I don't know about every -- to a certain extent, there may be
> adverse inferences that can be drawn, you're going to have to tell
> me the prior evidence that you have, the prior information that he's
> provided, the prior testimony that he's given, and where you want
> those adverse inferences drawn.  You've got to dot the I's and cross
> the T's.  To the extent there's a proper inference, I'll draw it.  To
> the extent that there isn't, I won't.

Transcript of 6/10/2008 Hearing, Doc. No. 1792, at 302-03 (emphasis added).

5

Neither Mr. Prosser nor his counsel objected or asked for curative language at the time and, in fact, the comment complained of was based on the evidence of record and the argument of counsel at that hearing.  The record reflects why a finding of waiver may not have been warranted and the ruling, which was made after I read the cases provided and heard from the parties again, benefitted Mr. Prosser.  No appeal was taken, nor was a request for other relief made.  The comment was based on the evidence presented in the case and in explanation of my finding that, despite numerous prior statements under oath on the same matters that would be at issue in the trial, Mr. Prosser would not be found to have waived his Fifth Amendment privilege because then-current circumstances provided a sound basis for his invocation of that privilege.

Moreover, my comment was nothing more than recognition of precisely what Mr. Prosser's counsel previously argued and asked me to find when Mr. Prosser asserted the Fifth Amendment at his §341 meeting.[5]  In support of Mr. Prosser's ability to invoke the Fifth Amendment, Mr. Prosser's counsel stated: "The Debtor has demonstrated there is not only a possibility, *but a very real danger* that questions posed and answered at the 341 meeting could incriminate the Debtor in a subsequent criminal proceeding for two reasons.  First, the Grand Jury has commenced an investigation into the bank at which the Debtor was a former director (and owner) and two companies he formerly controlled...."  Jeffrey J. Prosser's Opposition to Rural Telephone Finance Cooperative's Motion to Compel, Doc. No. 1349, at ¶30 (emphasis

---

[5] By way of background, "[i]n Mr. Prosser's individual Chapter 7 case, the Rural Telephone Finance Cooperative...filed a motion to compel Mr. Prosser to answer questions at the §341 meeting....Mr. Prosser...asserted the Fifth Amendment.  The basis of Mr. Prosser's assertion of the Fifth Amendment Privilege is the fact that a Grand Jury has been convened to investigate the affairs of the Virgin Islands Community Bank ..which Mr. Prosser formerly owned and of which he was the major stockholder."  Memorandum Opinion, Doc. No. 1759, at 2.

added).  It is entirely inconsistent to then argue, albeit incorrectly, that this court improperly

"concluded [Mr. Prosser] ought to assert his Fifth Amendment rights because of his criminal

culpability."[6]  Jeffrey Prosser's Memorandum of Law and Argument, Doc. No. 2370, at ¶34.

Therefore, despite Mr. Prosser's contention that this court improperly prejudged his criminal

culpability, which I did not do (and would have no jurisdiction to do), I simply adopted the

argument of Mr. Prosser's counsel and ruled in his favor.

       In his Memorandum of Law and Argument in Support of Motion for Recusal, Mr. Prosser

goes to great lengths to describe the importance of the Fifth Amendment privilege against self-

incrimination.  I agreed and did, in fact, recognize this point by finding that Mr. Prosser had not

waived his Fifth Amendment privilege.[7]

---

[6] The argument misstates the record.  I said, "If *they* [the Prossers] *think* that they are
criminally culpable...."  Transcript of 6/10/2008 Hearing, Doc. No. 1792, at 303 (emphasis
added).

[7] Mr. Prosser cites to *Griffin v. California*, 380 U.S. 609 (1965), for the proposition that
this court somehow made the assertion of the privilege against self-incrimination costly by
inferring Mr. Prosser's guilt and voicing that opinion at the Exemptions Trial.  Jeffrey Prosser's
Memorandum of Law and Argument, Doc. No. 2370, at ¶29.  First of all, Mr. Prosser did not
assert the privilege so there was no such "cost."  Second, I made no inferences based on Mr.
Prosser's assertion of the Fifth Amendment privilege, because due to a settlement reached by the
parties, he did not assert the Fifth Amendment at the Exemptions Trial, no one requested any
adverse inference, and the issue never arose.  Third, even if Mr. Prosser had sought Fifth
Amendment protection, "in civil cases, 'the Fifth Amendment does not forbid adverse inferences
against parties...when they refuse to testify in response to probative evidence offered against
them.'... Thus, as long as there was independent evidence to support the negative inferences
beyond the invocation of the privilege against self-incrimination, the inferences could be drawn."
*United States v. Stelmokas*, 100 F.3d 302, 311 (3d Cir. 1996), *cert. denied* 520 U.S. 1242 (1997).
In this case, after the parties agreed to limit the areas of inquiry at trial, Mr. Prosser did not, in
fact, assert the Fifth Amendment.  Mr. Prosser attempts to create a parade of horribles that will
result from the court's comment.  He asserts that "[t]he Court's *on-the-record,* public comment
on Mr. Prosser's 'need' to assert his Fifth Amendment right is more troubling now that it has
been decided that there is to be a jury trial for Mrs. Prosser and the adult Prosser children.  How
                                                                                    (continued...)

7

In any event, the matter is now moot.  Mr. Prosser raised this issue due to his having invoked the Fifth Amendment at the Chapter 7 §341 meeting.  That resulted in the RTFC's motion to compel him to answer questions, Doc. No. 1297, which the Chapter 7 Trustee joined, Doc. No. 1319, and to which Mr. Prosser objected,  Doc. No. 1349.  After abundant research, argument, trial delay, and this court's Memorandum Opinion of June 9, 2008, Doc. No. 1759, which was in his favor, Mr. Prosser did <u>not</u> invoke the Fifth Amendment upon reaching agreement with opposing counsel that counsel would not inquire about the Virgin Islands Community Bank, the one area Mr. Prosser decided was of concern in tending to incriminate him.  Stipulation, Doc. No. 1812.

Rulings Made By the Court

Mr. Prosser lists numerous rulings made by this court to support his allegations of partiality:

---

[7](...continued)
are they to receive a fair trial, untainted by reports of this Court's remarks? In the remarkably small community of the U.S. Virgin Islands, the Court's comments are undoubtedly well-known and are surely to be repeated in the press as the Fraudulent Conveyance matter proceeds to trial." Jeffrey Prosser's Memorandum of Law and Argument, Doc. No. 2370, at ¶31.  Mr. Prosser does not explain how the record of a hearing held on his *on-the-record* request for a ruling that he could assert the privilege, and his then unused ability to assert it in his Exemptions Trial would impact his wife's defense in an unrelated matter in a different court. (No citation to an order authorizing a jury trial as to the adult Prosser children has been provided and I am aware of none.)  Even if such drastic consequences as Mr. Prosser asserts would result, "the severity of the consequences do not alter the legal determination of whether the court may draw inferences against a person pleading the privilege against self-incrimination."  *Stelmokas*, 100 F.3d at 311.

In addition, Mr. Prosser argues that the comment was noted in an article of July 25, 2008, at TheDeal.com, available only by paid subscription, and that somehow this constitutes a basis for recusal.  The quote Mr. Prosser referred to in his recusal motion was an opinion by the author of the article, not a finding of this court.

8

(1) Conversion of Mr. Prosser's Chapter 11 to a Chapter 7[8]
(2) Appointment of James Carroll as Chapter 7 Trustee[9]
(3) Finding Mr. Prosser's acquisition of the Huntington Bank
claim was in bad faith and sale of Group II Assets over Mr.
Prosser's Objection[10]

---

[8] Mr. Prosser appealed the order converting the case to a Chapter 7. Doc. No. 891. The
Notice of Appeal was subsequently withdrawn, Doc. No. 953, due to a pending Motion for
Reconsideration, Doc. No. 870, which was denied, Doc. No. 1108. Mr. Prosser also appealed
that order, Doc. No. 1110. The District Court found that, "[i]n light of the entire record,...the
Bankruptcy Division did not abuse its discretion in converting this case from a Chapter 11 to a
Chapter 7 proceeding. The Court further finds that the Bankruptcy Division did not abuse its
discretion by denying Mr. Prosser's motion for reconsideration of the conversion order." Case
No. 07-cv-156, Doc. No. 49, at 10. Mr. Prosser has appealed the order of the District Court.
Case No. 07-cv-156, Doc. No. 51.

[9] The order dated October 31, 2007, overruled the objections raised by Mr. Prosser as to
the election of James P. Carroll as the Chapter 7 Trustee. Doc. No. 948. Mr. Carroll was
appointed as Trustee, Doc. No. 949, and no appeal was filed.

Mr. Prosser also asserts that "this Court has substantively done nothing" with respect to
Mr. Carroll's disbursement of funds from the sale of the Lake Placid property to the Greenlight
Entities, creditors in these related bankruptcy cases, in contravention of this court's order.
Motion for Recusal, Doc. No. 2370, at 3, n.1A. The Trustee asserted that there was a need to
disburse funds to the Greenlight Entities as the title company would not have otherwise cleared
title absent a release of the lien. Transcript of 11/18/2008 Hearing, at Doc. No. 2434, at 10-12.
The court stated with regard to the distribution, "[I]f the funds have been disbursed, they've been
disbursed and we will address it down the road. If there is, in fact, a need to release the lien,
then there's a need to release the lien. If it turns out that there is no lien, then the Trustees better
be prepared to file suits to get them back....Or file a claim against your bond." Transcript of
11/18/2008 Hearing, at Doc. No. 2434, at 19-20. The court reiterated this later in the same
hearing. "I do think that the Trustee has a bond and probably ought to be making a claim against
it at this point because I don't understand how the Trustee did this action either." Transcript of
11/18/2008 Hearing, at Doc. No. 2434, at 60. The record reflects that the Chapter 7 Trustee
would be held financially responsible if it was determined that the funds were improperly
disbursed to the Greenlight Entities. The bankruptcy case is ongoing and the issue of whether
the distribution will stand is not yet ripe.

[10] The ruling that Mr. Prosser did not have standing to object to the sale of the Group II
Assets was made during the December 19, 2008 hearing. Transcript of 12/19/2008 Hearing,
Doc. No. 2288, at 85. The order approving the sale of assets was entered December 19, 2008.
Doc. No. 1053. Mr. Prosser appealed the order and ruling. Case No. 07-30012, Doc. No. 1054.
The statement of issues on appeal, docketed in the District Court as the designation of the record,
reads as follows:

(continued...)

9

(4) Sale of Mrs. Prosser's interest of the Lake Placid real estate

[10](...continued)

> 1. Whether the bankruptcy court erred in ruling that Jeffrey J. Prosser's assignment of claim from Huntington National Bank was purchased in bad faith.
>
> 2. Whether the Bankruptcy Court erred in granting the Chapter 11 Trustee's "Motion for Order (A) Approving Sale of All the Debtor's Primary Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief" (DE 360, the "Trustee's Motion") by denying Jeffrey J. Prosser standing, including the right to cross examine witnesses, during the hearing on the Trustee's Motion

Designation of Record on Appeal filed by Jeffrey J. Prosser, Case No. 08-cv-00160, Doc. No. 6. The appeal was untimely and was dismissed by the District Court on July 21, 2009. Case No. 08-cv-00160, Doc. No. 10.

Furthermore, the issue of Mr. Prosser's standing at the time of the December 19, 2008, hearing was not a new issue before the court. Standing concerns had been raised in the prior proceedings and led to the entry of an order regarding Mr. Prosser's standing in the corporate cases. Case No. 07-30012, Doc. No. 805. That order was vacated on appeal. Case No. 08-cv-115, Doc. No. 15. It is my understanding of the District Court's opinion that the standing order was vacated based on the apparent breadth of its terms. The District Court did not cite to any circumstance where Mr. Prosser had been denied standing inappropriately. Significantly, the District Court did not overturn my ruling as to the participation of Mr. Prosser in the hearing related to the sale of the Group II Assets. As stated above, that appeal was dismissed. Furthermore, while Mr. Prosser was not permitted to cross examine witnesses at the December 19, 2008 hearing, I read and considered the objection filed by Mr. Prosser, as I stated on the record. Transcript of 12/19/2008 Hearing, Case No. 07-30012, Doc. No. 1068, at 85, 110. Furthermore, Mr. Prosser's counsel was permitted to argue at the conclusion of the evidence. *Id.* at 110-14. I considered his argument. Therefore, Mr. Prosser participated and his objections were considered by the court.

An objection to the claim of Huntington National Bank, assigned to Jeffrey Prosser, was filed on January 9, 2009. Case No. 07-30012, Doc. No. 1073. Mr. Prosser filed an Opposition to the objection. Doc. No. 1086. Mr. Prosser was given an opportunity to file supplemental materials, and he did file a document on November 16, 2009. Doc. No. 1524. The Chapter 11 Trustee has filed an Objection. Doc. No. 1533. Argument has not yet been heard.

and distribution of the proceeds from the §363(h) sale[11]
(5) Ruling that Mrs. Prosser had no right to a jury trial[12]

_____

[11] By order dated June 13, 2008, the court granted the Trustee authority to sell Dawn Prosser's interest in the Lake Placid property.  Adv. No. 08-3009, Adv. Doc. No. 33.  Dawn Prosser appealed that order, and her appeal was dismissed.  Case No. 08-cv-00096, Doc. Nos. 1 and 12.  Dawn Prosser filed a motion for reconsideration of the District Court's order which was denied.  Case No. 08-cv-00096, Doc. Nos. 15 and 20.  On July 23, 2008, I entered an order approving the sale of the property to John D. Klingerman, free and clear of all liens, claims and encumbrances, including the interests of Dawn Prosser.  Adv. No. 08-3009, Adv. Doc. No. 55.  That order was also appealed by Dawn Prosser and the appeal was dismissed as moot.  Case No. 08-cv-00113, Doc. No. 23.  Klingerman failed to close on the sale, and an order was entered approving the sale to Robert D. Clark and Toni R. Miles.  Adv. No. 08-3009, Adv. Doc. No. 86.  That order was not appealed.  On November 21, 2008, I entered an order authorizing the Chapter 7 Trustee to make an initial distribution of the Lake Placid sale proceeds.  Adv. Doc. No. 110.  That order was not appealed.  Dawn Prosser filed suit against Klingerman in the District Court of the Virgin Islands, and that action was dismissed pursuant to a settlement reached by the parties.  Case No. 09-cv-00015, Doc. No. 18. In addition, the Chapter 7 Trustee has filed an adversary action regarding Klingerman's failure to close Adv. No. 09-3001.

[12] This court issued an opinion and order, which was docketed in several adversaries, overruling Dawn Prosser's assertion of a right to a jury trial.  Adv. No. 08-3002, Doc. No. 80; Adv. No. 07-3010, Doc. No. 251; Adv. No. 08-3003, Doc. No. 25.

Dawn Prosser filed a notice of appeal in Adv. No. 07-3010.  Doc. No. 261.  The District Court affirmed the Bankruptcy Court's order dated May 7, 2008, on the basis that Dawn Prosser waived her right to a jury trial, if she in fact had such a right, because her motion to withdraw the reference was untimely.  Case No. 08-cv-77, Doc. No. 28, at 6-7.

Dawn Prosser filed a Motion to Withdraw Reference of Consolidated Adversaries (Adv. Nos. 07-3010, 08-3003, 08-3004, and 08-3006). *See* Case Nos. 08-cv-145, Doc. No. 1; 08-cv-146, Doc. No. 1; 08-cv-147, Doc. No. 1.  The District Court granted the motion only with respect to Adv. Nos. 08-3003 and 08-3006.  *See* Case Nos. 08-cv-146, Doc. No. 9; 08-cv-147, Doc. No. 9.

The District Court addressed Dawn Prosser's renewed request for withdrawal of the reference of Adv. No. 07-3010 and denied it.  Case No. 08-cv-145, Doc. No. 9, at 6-7.  In that same opinion, the District Court addressed Dawn Prosser's motion for withdrawal of the reference with respect to Adv. No. 08-3004.  That request was also denied on the basis that Dawn Prosser was not a party to that proceeding and did not have standing to bring a motion to withdraw the reference of the action.  Case No. 08-cv-145, Doc. No. 9, at 7.

With respect to Dawn Prosser's motion for withdrawal of the reference filed in Adv. No. 08-3002, the District Court denied the motion without prejudice and stated "Dawn Prosser may renew her motion...if and when the Bankruptcy Division certifies such action as trial-ready."  Case No. 08-cv-54, Doc. No. 7, at 10-11.  When both Mr. Prosser and the Chapter 11 Trustee

(continued...)

11

(6) Appointment of the Chapter 11 Trustee[13]

Although it is not explained by Mr. Prosser and is not clear to this court how the rulings recited in items 4 and 5 above could be viewed by a reasonable observer as bias against Mr.. Prosser, and despite this list of what Mr. Prosser views as unfavorable rulings, "[u]nfavorable rulings do not form an adequate basis for recusal." *Lewis v. Bell Atlantic/Verizon*, 321 Fed. Appx. 217, 221 (3d Cir. 2009).   Only in the rarest circumstances will judicial rulings provide evidence of the degree of favoritism or antagonism to require recusal where no extrajudicial source is involved.  *Liteky*, 510 U.S. at 555.  "Almost invariably, they are proper grounds for appeal, not for recusal."  *Id.*  Disagreement with a judge's rulings likewise is insufficient.  *Hill v. Carpenter*, 323 Fed. Appx. 167, 170 (3d Cir. 2009).

---

[12](...continued)
filed Motions for Summary Judgment in that adversary proceeding, this court, in compliance with the District Court's order, issued a Memorandum Opinion, Report and Recommendation to the District Court and Certification Pursuant to District Court Order. Adv. No. 08-3002, Doc. No. 212.  That recommendation is now before the District Court.
    Moreover, Mrs. Prosser is not in bankruptcy. Rulings affecting her participation in the cases do not establish evidence of bias against the debtor, Mr. Prosser.

[13] No objection was filed to the notice of appointment of Stan Springel as the Chapter 11 Trustee in the bankruptcy case of Innovative Communication Corp. Case No. 07-30012, Doc. No. 122, and no appeal was filed to the order approving his selection in that case, Doc. No.125. No appeal was filed to the order appointing Stan Springel as the trustee in the cases of Innovative Communication Company, LLC, and Emerging Communications, Inc.  *See* Case No. 06-30008, Doc. No. 523; Case No. 06-30007, Doc. No. 543.
    In addition, Mr. Prosser asserts that the Chapter 11 Trustee has "surprisingly" failed to object to any of the billings of Alvarez & Marsal, the primary consulting firm of the corporate estates.  Motion for Recusal, Doc. No. 2370, at 3, n.1B.  Administrative orders have been entered in the corporate cases establishing procedures for the compensation of professionals.  Case No. 07-30012, Doc. No. 253; Case No. 06-30008, Doc. No. 99.  The orders specify the process for submitting fee applications and objecting to those applications.  In addition, I review all fee applications before they are approved or otherwise ruled on. Mr. Prosser cites to no particular fee application to which he objects or how the Trustee's action or inaction in this regard establishes bias by this court.

12

While Mr. Prosser states that "a Motion for Recusal is not a substitute for an appeal," he nonetheless attempts to attack the rulings of this court after he has already taken an appeal or his opportunity to appeal has passed.  Jeffrey Prosser's Memorandum of Law and Argument, Doc. No. 2370, at ¶25.  Each of the rulings made in this case was based on the evidence presented and the arguments made by counsel.  The court has no familiarity with the facts of the case outside of these proceedings.  Simply put, I applied the law to the facts which I became familiar with solely through these proceedings.  "A denial of recusal is thus not an abuse of discretion if the complaint is 'merely based upon the judge's rulings in the instant case or related cases . . . or attitude derived from his experience on the bench.'"  *United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir. 1984).

Conduct of Counsel

As another basis for his motion, Mr. Prosser asserts that his counsel was repeatedly threatened with contempt and that this resulted in a "chilling effect on counsel's advocacy for his client."  Jeffrey Prosser's Memorandum of Law and Argument, Doc. No. 2370, at ¶39. Throughout these highly contentious proceedings, the court has found it necessary, at times, to direct *all* counsel to act appropriately.  Courtroom administration (including counsel's conduct in the courtroom) is one of my duties, and courts have wide discretion in the management of their cases.  *Wecht*, 484 F.3d at 217.

Regrettably, counsel's conduct has, from time to time, fallen well below what is expected of members of the bar. Comments regarding counsel's lack of decorum have been directed to *all* counsel, not just Mr. Prosser's.  Mr. Prosser specifically refers to one comment I made as an example of how his very experienced counsel was allegedly placed in fear of sanctions, which he

13

asserts chilled his counsel's participation in the proceedings. Motion for Recusal, Doc. No. 2730, at ¶21. He cites a *portion* of the August 25, 2008, hearing transcript in which I said, "And I told you before to bring your toothbrushes here. I meant every word of that." *Id.* at 18, n.23. However, the reference cited is incomplete and misleading. In fact, the comment was not directed only to Mr. Prosser's counsel. The court stated, "Now, I'm getting tired of the pot calling the kettle black from *both sides*. I thought I tried to make that clear before. The issues concerning who's doing what to whom, when and why, I've ordered you several times to pick up the phone and talk to each other before you file these motions. This is obviously not happening. And I told you before to bring your toothbrushes here. I meant every word of that." Transcript of 8/25/2008 Hearing, Doc. No. 2096, at 186 (emphasis added). Moreover, the following do not constitute a basis for finding bias or partiality: "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration - even a stern and short-tempered judge's ordinary efforts at courtroom administration - remain immune." *Liteky*, 510 U.S. at 556.

<u>Mr. Schoenbach's Participation</u>

Mr. Prosser alleges that this court evidenced bias in the treatment of Mr. Lawrence Schoenbach, one of Mr. Prosser's counsel.[14] Mr. Schoenbach initially became involved in these

---

[14] It is significant that Mr. Prosser has been represented by several different counsel from multiple law firms throughout these bankruptcy cases: Thomas Alkon, Robert F. Craig, Michael J. Lichtenstein, Lisa C. McLauglin, Alex M. Moskowitz, Jeffrey Weiss, and Norman A. Abood, in addition to Mr. Schoenbach. *See* Doc. Nos. 1, 15, 40, 61, 1375, 1604, and 1986.

proceedings as criminal counsel to the "Prosser family."[15]  Mr. Schoenbach's participation in

these bankruptcy cases has not been without objection.  The Chapter 11 Trustee filed a motion to

disqualify Mr. Schoenbach and his firm, on the basis of his firm's representation of ICC entities.

Doc. No. 1526.[16]  Additionally, Mr. Schoenbach represented Robert F. Craig, P.C., a firm that

serves as counsel to Mr. Prosser in his bankruptcy case, in an adversary action in which that firm

purported to act in the capacity of a creditor of Mr. Prosser's bankruptcy estate.  Adv. No. 08-

3051.

When the Chapter 11 Trustee orally objected to Mr. Schoenbach's representation at the

hearing on October 10, 2008,[17] which was not the first time Mr. Schoenbach's potential conflict

---

[15] Mr. Schoenbach stated at the April 16, 2008, hearing: "Just for the record, I am here
representing Mr. Prosser and Mrs. Prosser as well as the adult Prosser children solely on the
issue of the Fifth Amendment, and I have been acting in conjunction with each of their
respective attorneys."  Transcript of 4/16/2008 Hearing, Doc. No. 1557, at 47.

[16] An order denying the Trustee's motion was entered on June 17, 2008.  Doc. No. 1784.

[17] The hearing at which the Chapter 11 Trustee brought this oral motion was with regard
to Mr. Prosser's Emergency Motion to Dismiss; Motion for Disqualification, and Sanctions; and
Motion to Stay, which was filed on August 25, 2008, and set for hearing on October 10, 2008.
Doc. No. 2012.  Mr. Schoenbach was not a signatory to that motion. Just days before the hearing,
on October 6, 2008, counsel for Mr. Prosser filed a reply to the response to his motion.  Doc. No.
2151.  This reply was signed by Norman A. Abood, Robert F. Craig, *and* Lawrence H.
Schoenbach.  In the Chapter 11 Trustee's Emergency Motion for Leave to File a Surreply to Mr.
Prosser's Reply, he states, "The Motion was wholly unsupported, as Mr. Prosser waited until the
Reply to first submit a self-serving affidavit and the Declaration of Larry Schoenbach
("Schoenbach"), his criminal counsel whose current status in these proceedings remains in
limbo."  Doc. No. 2156, at 3, n.5.  Therefore, Mr. Prosser's characterization of the Trustee's
objection to Mr. Schoenbach's participation as a "*verbal* motion, raised for the first time at
hearing despite the 11 Trustee's having had the opportunity to file a written objection prior to
hearing" is totally inaccurate.  *See* Motion for Recusal, Doc. No. 2370, at ¶16.
       The motion for sanctions included a request to disqualify the Chapter 11 Trustee and his
counsel from the bankruptcies and adversaries relating to Mr. Prosser and to dismiss the
Trustee's objection to Mr. Prosser's exemptions.  Mr. Schoenbach admittedly has no experience
as bankruptcy counsel and was not a signatory to the motion.  Mr. Prosser's other counsel, Mr.

(continued...)

of interest was suggested,[18] this court stated, with respect to Mr. Schoenbach's representation of the Craig Firm, "Mr. Schoenbach, you can't represent the debtor and creditors in cases. I mean, it's pure conflict. You just can't do it." Transcript of 10/10/2008, Hearing Doc. No. 2169, at 13. The court went on to explain the problematic circumstances surrounding Mr. Schoenbach's representation of Mr. Prosser "[Y]ou know you represent all of the Prossers and [in] [sic] all of the criminal...defense matters if there are any....And you attempt to represent Mr. Prosser in these proceedings, I don't know who else. You're going to represent Mrs. Prosser in the upcoming trials, too, because that maybe [sic] an issue." *Id.* at 15.

Moreover, at the October 10, 2008, hearing, Mr. Schoenbach was attempting to argue on behalf of Mr. Prosser prior to the court's order admitting him as bankruptcy counsel. That order was entered on November 14, 2008. Doc. No. 2231. Even that order recognizes the potential conflicts, and provides that the Application to Serve as Special Trial Counsel is granted, "unless or until Schoenbach's continued representation of the Prosser Family as criminal defense counsel or in any other capacity in other proceedings, if any, creates a conflict of interest...." The court's

---

[17](...continued)
Abood and Mr. Craig, appeared at this hearing.

[18] The issue of Mr. Schoenbach's representation of Mr. Prosser can hardly be described as being "raised for the first time," as Mr. Prosser contends. Motion for Recusal, Doc. No. 2370, at ¶16. In fact, the appropriateness of Mr. Schoenbach's participation as Mr. Prosser's counsel had been before the court prior to the hearing in which the verbal motion was made. *See, inter alia,* Transcript of 10/03/2008 Hearing, Doc. No. 2170, at 161-62 (MR. GERON: "And then the other thing that I would just like to note with respect to that adversary proceeding, because we have been struggling with who is representing whom, is that it appears that Mr. Schoenbach is now representing Mr. Craig in that adversary proceeding. And I know that that motion by Mr. Schoenbach with respect to his admission and his compensation is still before Your Honor, so I would just add to the complexity of the representations there the fact that Mr. Schoenbach has signed that complaint on behalf of Mr. Craig.")

order also recognizes that, "If at any time, Lawrence Schoenbach resumes representation of

Robert F. Craig, P.C., this order will be immediately vacated."  No party appealed the order.

There was no "vanishing conflict" as Mr. Prosser suggests.  At the time that Mr. Schoenbach

was permitted to replace Mr. Weiss as Mr. Prosser's substitute local counsel,[19] the order

admitting him as counsel had been entered, in which the court had addressed the conflict of

interest issues which had been presented.

Despite Mr. Prosser's contention that the court's acceptance of the Chapter 11 Trustee's

verbal motion at the Group II Asset sale hearing is evidence of the deference shown to Trustee's

counsel in contrast to the alleged animosity shown to Mr. Schoenbach by not permitting him to

argue on behalf of Mr. Prosser at that hearing, the two issues are completely distinct.  The

potential conflicts of interest could not be ignored.  The concern voiced by the Trustee was not a

new matter, but rather an issue that had been before the court. Furthermore, Mr. Prosser was not

left without counsel at the October 10, 2008, hearing.  Both Mr. Abood (a civil trial litigator) and

Mr. Craig (bankruptcy counsel) entered their appearances at that hearing.  Transcript of 10/10/08

---

[19] The need for substitute local counsel arose because Mr. Weiss, who was serving as local counsel, moved to withdraw, Doc. No. 2192.  The Local Bankruptcy Rules of the District Court for the Virgin Islands provide that an attorney "may not be admitted *pro hac vice* in this Court unless associated with an attorney who is a member of the Bar of this Court and who maintains an office in this district for the regular transaction of business, upon whom all notices, orders, pleadings and other papers filed in the case shall be served and who shall be required to sign all papers filed with the Clerk."  *See* LBR 9010-1(C). Messrs. Abood and Craig were admitted *pro hac vice*.  *See* Doc. Nos. 15 and 1986.  At the January 20, 2009, hearing, the court stated, "I believe I did enter an order that appointed Mr. Schoenbach as counsel.  I don't know if he's appointed as local counsel.  But since he's admitted to practice in the Virgin Islands I think that covers the situation."  Transcript of 1/20/2009 Hearing, Doc. No. 2349, at 27. In other words, this Court did not require pro hac vice counsel to find new local counsel because the order admitting Mr. Schoenbach as counsel for Mr. Prosser was entered on November 14, 2008. Doc. No. 2231.

17

Hearing, Doc. No. 2169, at 5.[20]

Mr. Prosser also asserts that Mr. Schoenbach was improperly "prohibited from *talking* to other counsel in the case." Motion for Recusal, Doc. No. 2370, at ¶20. In fact, the court did not make such a broad ruling as Mr. Prosser suggests.[21] The court, simply to avoid conflicts of interest, ruled that Mr. Schoenbach "is not permitted in any way, shape or form to assist in any regard with anybody's defense in this matter other than Mr. Prosser....[Mr. Schoenbach] represent[s] Mr. Prosser. There is not a joint defense issue." Transcript of 11/17/2008 Hearing,

---

[20] Mr. Prosser asserted that "Mr. Abood, counsel who ultimately argued the issues on Mr. Prosser's behalf[,] specifically stated on the record that Mr. Schoenbach had briefed this [area] [sic] of the law, and that criminal law and statutes were outside of Mr. Abood's [area] [sic] of expertise." Motion for Recusal, Doc. No. 2370, at 12, n.17. It should be noted that "[a]n attorney admitted *pro hac vice* or local counsel shall appear at court hearings and be prepared to address *all* issues set for argument or hearing." LBR 9010-1(B) (emphasis added).

Moreover, Mr. Schoenbach was at the hearing and the court permitted him to confer with Mr. Abood during argument. Transcript of 10/10/2008 Hearing, Doc. No. 2169, at 48. In fact, Mr. Schoenbach passed notes to Mr. Abood. *Id.*

[21] As the record reflects, the court, when asked for clarification by Mr. Abood, specifically addressed what type of communication was appropriate:

> MR. ABOOD: Just for clarification, are you saying I can't communicate with counsel for Mrs. Prosser?
> THE COURT: Communicate, communicate as in hi, how are you? Yes, certainly you may do that.
> MR. ABOOD: Communicate as to what's going on in the courtroom?
> THE COURT: Mr. Abood, I don't know what questions you're asking him. Can you tell them what questions to ask in defense of Mrs. Prosser's position in this case? That's why she has counsel in the case. Mr. Schoenbach is the issue, not you. Mr. Schoenbach transmitting questions on behalf of somebody else's defense. I issued a very specific order. He may not represent any party's interest in this case because he has very specific potential conflicts of interest.

Transcript of 11/17/2008 Hearing, Doc. No. 2267, at 26-27.

Doc. No. 2267, at 26.  Mr. Schoenbach had been criminal counsel to the Prosser Family.  When

this court admitted him as counsel, the order explicitly provided, "IT IS FURTHER ORDERED

that Lawrence H. Schoenbach shall no longer serve as criminal defense counsel for any party

other than Jeffrey J. Prosser in this bankruptcy proceeding."  Doc. No. 2231. No appeal was

taken; no motion for reconsideration was filed.

<u>Familiarity with Applicable Law</u>

      Mr. Prosser asserts that this court exhibited bias against him in a hearing held January 21,

2009, during arguments related to a motion for relief from stay filed by Merrill Lynch, Doc. No.

1852, in Mr. Prosser's chapter 7 case, to which Mr. Prosser had filed an objection, Doc. No.

1898.  Specifically, Mr. Prosser takes issue with the court's research of case law in these

bankruptcy proceedings.  Mr. Prosser's Motion for Recusal characterizes the events of the

hearing as follows:

> During an exchange with counsel for Merrill Lynch, the Court
> indicated that it was *sua sponte* researching Third Circuit case law
> on piercing the corporate veil, and reverse piercing of corporate
> veils, to achieve the goal of subjecting property transferred to
> creditor claims and gave assurances to Merrill Lynch's counsel
> that the subject real property, the majority of which property was
> acquired by, and titled solely in Mrs Prosser's name since 1990,
> could be sold, if through no other means, then pursuant to a *plan.*
> Whether, that plan be a liquidating plan or re-organization plan
> was unclear.  Mr. Prosser, being in liquidation and Mrs. Prosser
> not being in bankruptcy at all, the only reasonable inference to be
> drawn from the Court's reference to disposing of property
> encumbered by Merrill Lynch's mortgage pursuant to a 'plan' is
> that the Court is, *sua sponte*, investigating methods of bringing
> Mrs. Prosser's property into the pending Chapter 11 cases.

Motion for Recusal, Doc. No. 2370, at ¶28.

This court did nothing of the sort and has no such agenda.  The Virgin Islands relies upon

common law doctrine and it is this court's duty to become familiar with the law applicable in the

jurisdiction in which it sits.  As the record reflects, this court expressed preliminary agreement

with Mr. Prosser's contention[22] that he was not an owner of the property and simply recognized

that, based upon issues raised by the parties, it was unclear where the title to the property in this

Chapter 7 (a liquidation chapter which does not permit plans to be filed and, hence, where no

plan of any type will be confirmed) was held.[23]  Ownership, possession, and similar issues have

---

[22] Jeffrey J. Prosser's Objection to Merrill Lynch Credit Corporation's Amended Motion for Relief from the Automatic Stay, Doc. No. 1898, at ¶13 ("MLCC fails to recognize that any lien asserted by the RTFC is limited to Jeffrey Prosser's interest in the property and that the property itself is not owned by Jeffrey Prosser.  It is owned by Dawn Prosser who is not a judgment debtor.")

[23] The relevant portions of the court's comments in refusing to grant immediate relief from stay at the hearing are as follows:

> However, I am not convinced that Mr. Prosser's estate actually owns this property. I've been doing a little research into the law simply to determine what these issues are really going to be about, and I've discovered that in the Third Circuit there are cases that talk about the application of common law doctrine that do in fact talk and allow courts to consider whether or not [principles] [sic], and I'm going to make analogies here, because I'm not making findings, I'm simply reading at this point, I'm not looking for findings or [principles] [sic] except for my information that would, for example, allow things like reverse corporate veil piercings and corporate veil piercings.  They've even allowed reverse corporate veil piercings in circumstances where the debtor doesn't own the corporation to allow dischargeability actions to succeed against the debtor.  So the Circuit takes very seriously the transfer of assets between - by one debtor to the detriment of creditors of another entity.
> So there are serious issues that need to be looked at in these series of cases as to where the real ownership of the collateral that's involved will be.  None of this affects Merrill Lynch's interest in the mortgage, which, of course, goes to where the title is held. But it does affect the estate's interest in how the value of the

(continued...)

plagued these bankruptcy cases, and motions and adversary proceedings have been filed to

resolve which estate or individual has an interest in property and whose creditors will be entitled

to payment as a result.[24]   Knowledge of governing case law is required for a judge to effectively

fulfill her duties and is not evidence of personal prejudice.   *Cf. NLRB v. Honaker Mills*, 789 F.2d

262, 265 (4th Cir. 1986)("We do not believe that the ALJ's remark reflected anything more than

the familiarity with governing caselaw that was required of him for the effective performance of

his duties...").   Furthermore, a judge's expression on a point of law is not sufficient to show

personal bias or prejudice.   *Sakellar v. Lockheed Missiles & Space Co.*, 765 F.2d 1453, 1457 (9th

_____

[23](...continued)
> collateral over and above the mortgages will shake out and whose
> creditors may be entitled to payment. So the concept that the
> property should stay right where it is for now is a very good one.
> Because I don't know whose creditors will be entitled to payment
> at the end of all of this when everything comes out in the wash.
> But having taken a look at what the issues are as the parties have
> raised them, I am convinced that it is a big [mess] [sic] and I don't
> know whose interest will predominate when all is said and done.

Transcript of 1/21/2009 Hearing, Doc. No. 2358, at 59-60.

The court's comments are consistent with the issues raised by the parties.  Ownership of
the property was clearly raised in the Chapter 7 Trustee's Objection to Merrill Lynch's Motion
for Relief from Stay, Doc. No. 1900, in which the Chapter 11 Trustee joined, Doc. No. 1914.
*See* Chapter 7 Trustee's Objection to Merrill Lynch's Motion for Relief from Stay, Doc. No.
1900, at ¶5 ("The Debtor's estate owns some portion of the land adjoining the Property, and both
the Chapter 7 Trustee, and Stan Springel, Chapter 11 Trustee...assert competing legal and
equitable interests in the Property.  The Trustees have commenced litigation in this Court to
determine the true ownership of the Property and Shoys Mansion....").

[24]Adversaries that have been commenced include: Adv. No. 07-3010 (Chapter 11
Trustee's complaint seeking turnover of property of the estate against Jeffrey Prosser, Dawn
Prosser, and their children), Adv. No. 08-3002 (commenced by the Chapter 11 Trustee seeking
the recovery of the Palm Beach property, titled in the names of Jeffrey and Dawn Prosser), Adv.
No. 08-3006 (Chapter 7 Trustee's complaint against Dawn Prosser to recover alleged pre-
petition fraudulent transfers and unauthorized post-petition transfers).

Cir. 1985).  The view of the law a judge acquires through scholarly reading is not sufficient to

show bias or prejudice. *Liteky*, 510 U.S. at 554.  In deferring Merrill Lynch's motion for relief

from stay, the court simply commented on the law as it applied to the issues involved in these

cases and made no findings.  The ruling, supporting Mr. Prosser's objection, is not evidence of

bias against Mr. Prosser.

<u>Conclusion</u>

For the reasons stated above the motion to recuse will be denied.  The proper method to

raise alleged errors of fact or law is to identify  the issue at the time, or by motion for

reconsideration or appeal.  Mr. Prosser is clearly familiar with this process as he has filed

multiple appeals in these proceedings.  This motion raises the same issues that are on appeal, or

could have been appealed, or with respect to which an appeal has been decided or withdrawn.

The motion reviews matters in isolation and often out of context and misrepresents other events.

A reasonable person knowing all the facts would not question this court's impartiality.  *In re*

*Kensington Intern. Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003).  There is no basis in fact or law for

the relief sought.

An appropriate order will be entered.

Dated:   Dated: 12/4/2009
         17:20:32

*Judith K. Fitzgerald*                    **cjs**
Judith K. Fitzgerald
United States Bankruptcy Judge

22

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## BANKRUPTCY DIVISION
## DIVISION OF ST. THOMAS AND ST. JOHN

IN RE

| | |
|---|---|
| Jeffrey J. Prosser<br>     Debtor | Bankruptcy No. 06-30009-JKF<br>Chapter 7<br>**Related to Doc. No. 2370, Motion to Recuse<br>Judge filed by Debtor Jeffrey J. Prosser** |
| Innovative Communication Company<br>     Debtor | Bankruptcy No. 06-30008-JKF<br>Chapter 11<br>**Related to Doc. No. 1445, Motion to Recuse<br>Judge filed by Debtor Jeffrey J. Prosser** |
| Innovative Communication Corporation<br>     Debtor | Bankruptcy No. 07-30012-JKF<br>Chapter 11<br>**Related to Doc. No. 1115, Motion to Recuse<br>Judge filed by Debtor Jeffrey J. Prosser** |

## ORDER DENYING MOTION TO RECUSE JUDGE

     **AND NOW**, this ___4th___ day of ___December___, **2009,** for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED** that the Motion to Recuse Judge is **DENIED**.

     It is **FURTHER ORDERED** that the Clerk shall docket this Order in all three bankruptcy cases.

     It is **FURTHER ORDERED** that counsel for Debtor Jeffrey J. Prosser shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

*Judith K. Fitzgerald*

Judith K. Fitzgerald
United States Bankruptcy Judge

**cjs**

1